UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GEM MECHANICAL SERVICES, INC. and GEM PLUMBING & HEATING CO., INC. Plaintiffs, | : | |
| vs. | : | C.A. No. 06-403ML |
| MARSH & McLENNAN COMPANIES, INC., MARSH, INC., MARSH USA, INC., ACE AMERICAN INSURANCE COMPANY, and BANKERS STANDARD INSURANCE COMPANY Defendants. | : | |

**FIRST AMENDED COMPLAINT**

**PARTIES**

1. Plaintiff, Gem Mechanical Services Co., Inc., is a Rhode Island corporation with its principal place of business located in Lincoln, Rhode Island.

2. Plaintiff, Gem Plumbing & Heating Co., Inc. (together with Gem Mechanical Services Co., Inc., the “Gem Companies”), is a Rhode Island corporation with its principal place of business located in Lincoln, Rhode Island.

3. Upon information and belief, Defendant, Marsh & McLennan Companies, Inc. (“MMC”), is a Delaware corporation with its principal place of business located in New York, New York.

4. Upon information and belief, Defendant, Marsh USA, Inc. (“Marsh USA”), is a Delaware corporation with its principal place of business located in New York, New York.

5. Upon information and belief, Defendant, Marsh, Inc. (together with MMC and Marsh USA, “Marsh”), is a Delaware corporation with its principal place of business located in New York, New York.

6. Upon information and belief, Defendant, ACE American Insurance Company ("ACE"), is a Pennsylvania corporation with its principal place of business located in Pennsylvania.

7. Upon information and belief, Defendant, Bankers Standard Insurance Company ("Bankers Standard"), is a Delaware corporation with its principal place of business located in Philadelphia, Pennsylvania.

## JURISDICTION

8. The amount in controversy is sufficient to establish this Court's jurisdiction over this action.

## VENUE

9. Providence County is the appropriate venue for this action.

## FOREIGN LAW

10. Pursuant to R.I. Gen. Laws § 9-19-6, the Gem Companies intend to offer evidence of the common law, statutes and regulations of other states, including but not limited to Massachusetts. The Gem Companies further intend on asking this Court to take judicial notice of the common law, statutes and regulations of other states, including but not limited to Massachusetts.

## FACTUAL ALLEGATIONS

11. Upon information and belief, Marsh is the largest insurance broker in the world.

12. Ace and Bankers Standard are insurance companies that issue policies of insurance to construction contractors and subcontractors.

13. The Gem Companies are subcontractors who have performed plumbing and mechanical work on various construction projects in Massachusetts and Rhode Island.

14. In the ordinary or typical construction project arrangement ("Standard Arrangement"), subcontractors procure and maintain their own insurance at levels and in amounts determined by the owner and/or general contractor.

15. Under the Standard Arrangement, each subcontractor procures insurance coverage, including workers' compensation insurance, through its own insurance broker and carrier(s).

16. On owner controlled insurance program ("OCIP") construction projects, the owner implements a mandatory process whereby it procures and maintains one comprehensive policy of insurance known as a wrap-up policy that covers all contractors and subcontractors involved with the project ("OCIP Arrangement"). Subcontractors who desire to bid on OCIP projects must agree to this process and are prohibited from procuring the requisite minimum insurance from other sources.

17. OCIPs are most often utilized on large construction projects involving numerous subcontractors. The subcontractors are charged for their respective wrap-up insurance premiums by way of deductions from their payment requisitions.

18. Upon information and belief, the utilization of wrap-up policies on OCIP projects financially benefits the owners who appreciate the resultant savings from purchasing one bundled, comprehensive policy in lieu of numerous smaller polices. Upon information and belief, the owner appreciates the savings because it charges each subcontractor the same premium the subcontractor would have paid had it procured its own individual policies. Upon information and belief, these savings often amount to 1% to 2% of the overall project budget.

19. Workers compensation insurance premiums are based on a number of factors including: (i) the type or category of work that each employer performs and how risky that work

is (risk classification); (ii) an employer's payroll hours; and (iii) an employer's loss history.

20. Once a subcontractor-employer is categorized into a risk classification, its payroll hours and loss history are calculated to determine its experience modification factor ("MOD").

21. The MOD is an insurance premium rating mechanism that is designed to measure a subcontractor-employer's risk in comparison to other similarly classified employers, in part, by weighing the number of payroll hours against the number of work-related injuries. The more payroll hours that a subcontractor-employer generates without losses, the lower its MOD will be.

22. A MOD of 1.00 equals the base rate. A less risky subcontractor-employer will be assigned a MOD below 1.00, while a more risky subcontractor-employer will be assigned a MOD above 1.00.

23. A subcontractor-employer assigned a MOD of 1.10 will be charged approximately ten (10) percent more for workers' compensation insurance than a similarly classified employer with a MOD of 1.00. A subcontractor-employer assigned a MOD of .90 will be charged approximately ten (10) percent less for workers' compensation insurance than a similarly classified employer with a MOD of 1.00.

24. On OCIP projects, subcontractor-employers report their respective payroll hours and loss history data to the owner's insurance broker ("OCIP Administrator") rather than their own insurance broker. The OCIP Administrator then reports this data to the insurance carrier chosen by the owner ("OCIP Insurer") who reports the data to the National Council on Compensation Insurance, Inc. ("NCCI"). NCCI is a Florida-based not-for-profit corporation that provides analysis of industry trends and prepares workers' compensation insurance rate and loss cost recommendations.

25. NCCI performs the calculations necessary to determine the OCIP insured's MOD. NCCI accepts payroll data exclusively from insurance carriers, and does not accept such data from OCIP insureds.

26. Failing to report and/or under-reporting of a subcontractor-employer's payroll data by an OCIP Administrator to the OCIP Insurer or by the OCIP Insurer to NCCI will cause an artificially inflated MOD and excessively high insurance premiums for the subcontractor-employer if the unreported or under-reported payroll data includes no losses or disproportionately lower losses. Similarly, an OCIP Insurer's failure to credit properly the subcontractor-employer's payroll data in such case will cause an artificially inflated MOD and excessively high insurance premiums for the subcontractor-employer.

27. MODs are not only used by OCIP Administrators and OCIP Insurers to calculate a subcontractor-employer's insurance premiums for OCIP projects, but they are also used to determine the subcontractor-employer's workers' compensation premiums for non-OCIP projects utilizing the Standard Arrangement. Therefore, a MOD that is artificially inflated improperly and unfairly causes a subcontractor-employer's workers' compensation insurance premiums to be excessively high for all of its projects.

28. Moreover, subcontractor-employers are often disqualified from even bidding on OCIP projects if their MOD is above a predetermined threshold. Thus, artificially inflated MODs may cause economic harm to innocent subcontractor-employers in the form of excessive workers' compensation insurance premiums and/or lost job opportunities and lost profit.

29. Subcontractor-employers are further harmed by artificially inflated MODs because certain states, including Massachusetts, impose an All Risk Adjustment Program ("ARAP") surcharge equal to a one (1) percent premium increase for each one-hundredth (.01)

increment that the subcontractor-employer's MOD exceeds 1.00. For example, if a subcontractor-employer's MOD is incorrectly determined to be 1.06, when in actuality it should be 1.00, that subcontractor-employer is wrongfully assessed a surcharge equal to six (6) percent of its workers' compensation insurance premium.

30. Marsh frequently serves as OCIP Administrator on OCIP projects.

31. ACE and/or Bankers Standard frequently issue wrap-up polices for OCIP projects.

32. The Gem Companies have performed plumbing and mechanical work as subcontractors on various OCIP projects in Rhode Island and Massachusetts in which Marsh was the OCIP Administrator and ACE and/or Bankers Standard was the OCIP Insurer.

33. The Gem Companies have reviewed and analyzed their payroll data that was reported to Marsh and compared it to (i) the payroll data that was prepared and/or reported to ACE or Bankers Standard by Marsh, and (ii) the payroll data that was prepared and/or reported to NCCI by various OCIP Insurers, including ACE and Bankers Standard. The payroll data actually reported to Marsh by the Gem Companies is significantly higher than the payroll data ultimately reported to NCCI. This discrepancy reveals that a substantial number of payroll hours were not reported to ACE or Bankers Standard by Marsh and/or to NCCI by ACE and/or Bankers Standard.

34. All conditions precedent relative to the Gem Companies' claims have been performed or have occurred.

## COUNT I
## BREACH OF CONTRACT

**(Claims against MMC, Marsh and Marsh USA)**

35. The prior paragraphs are incorporated herein by reference as if set forth in their

entirety.

36. The Gem Companies entered into one or more contracts with MMC, Marsh and/or Marsh USA whereby MMC, Marsh and/or Marsh USA, in exchange for insurance premium commissions and/or other compensation, paid directly or indirectly by the Gem Companies, agreed to act as OCIP Administrator and, among other things, accurately report the Gem Companies' payroll and loss data to the respective OCIP Insurer.

37. MMC, Marsh and/or Marsh USA breached the terms of the contracts by not accurately reporting the Gem Companies' payroll and loss data to the respective OCIP Insurer.

38. The Gem Companies fulfilled their obligations under the contracts.

39. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's breach, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT II
## BREACH OF CONTRACT

**(Claims against ACE and Bankers Standard)**

40. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

41. The Gem Companies entered into one or more insurance contracts with ACE and/or Bankers Standard whereby ACE and/or Bankers Standard, in exchange for insurance premiums and/or other compensation, paid directly or indirectly by the Gem Companies, agreed to act as OCIP Insurer and, among other things, accurately report the Gem Companies' payroll and loss data to NCCI and credit the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums.

42. ACE and/or Bankers Standard breached the terms of the insurance contracts by not accurately reporting the Gem Companies' payroll and loss data to NCCI and/or by failing to credit properly the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums.

43. The Gem Companies fulfilled their obligations under the insurance contracts.

44. As a direct and proximate result of ACE's and/or Bankers Standard's breach, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT III**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Claims against MMC, Marsh and Marsh USA)**

45. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

46. At all times relevant hereto, MMC, Marsh and/or Marsh USA, as OCIP Administrator on various OCIP projects in Rhode Island and Massachusetts, owed a duty of good faith and fair dealing to the Gem Companies.

47. MMC, Marsh and/or Marsh USA breached the implied duty of good faith and fair dealing by reporting false or inaccurate payroll and loss data to the respective OCIP Insurers.

48. At all times relevant hereto, the Gem Companies acted in good faith and dealt fairly with MMC, Marsh and/or Marsh USA.

49. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's breach, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Claims against ACE and Bankers Standard)**

50. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

51. At all times relevant hereto, Ace and/or Bankers Standard, as insurers issuing wrap-up insurance policies on various OCIP projects in Rhode Island and Massachusetts, owed a duty of good faith and fair dealing to the Gem Companies.

52. Ace and/or Bankers Standard breached the implied duty of good faith and fair dealing owed to the Gem Companies by negligently or recklessly failing to:

(a) report accurately the Gem Companies' payroll and loss data to NCCI;

(b) credit properly the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums.

53. At all times relevant hereto, the Gem Companies acted in good faith and dealt fairly with Ace and/or Bankers Standard.

54. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's breach, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT V**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**

**(Claims against MMC, Marsh and Marsh USA)**

55. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

56. MMC, Marsh and/or Marsh USA, as the OCIP Administrator, contracted with the OCIP Insurer and/or the project owner for the purpose of providing wrap-up insurance policies for subcontractor-employers working on various OCIP projects in Rhode Island and Massachusetts.

57. The wrap-up insurance policies issued as a result of these contracts were intended in whole or in part for the benefit of the subcontractor-employers on the projects and the premiums for said policies were required to be paid in whole or in part by the subcontractor-employers.

58. The Gem Companies, as subcontractor-employers on these various OCIP projects, were intended beneficiaries of the contracts entered into between MMC, Marsh and/or Marsh USA and the OCIP Insurer and/or the project owner.

59. At all times relevant hereto, the Gem Companies paid their respective shares of the insurance premiums for the wrap-up polices.

60. MMC, Marsh and/or Marsh USA, as OCIP Administrator, breached said contracts by failing to report accurately the Gem Companies' payroll and loss data to the respective OCIP Insurers.

61. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's breach, the Gem Companies, as intended beneficiaries, have incurred and will continue to incur significant and substantial losses and damages.

## COUNT VI
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT

**(Claims against ACE and Bankers Standard)**

62. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

63. Ace and/or Bankers Standard contracted with MMC, Marsh and/or Marsh USA and/or the project owner for the purpose of providing wrap-up insurance policies for subcontractor-employers working on various OCIP projects in Rhode Island and Massachusetts.

64. The wrap-up insurance policies issued as a result of these contracts were intended in whole or in part to be for the benefit of the subcontractor-employers on the projects and the premiums for said policies were required to be paid in whole or in part by the subcontractor-employers.

65. The Gem Companies, as subcontractor-employers on these various OCIP projects, were intended beneficiaries of the contracts entered into between Ace and/or Bankers Standard and MMC, Marsh and/or Marsh USA and/or the project owner.

66. At all times relevant hereto, the Gem Companies paid their respective shares of the insurance premiums for the wrap-up polices.

67. Ace and/or Bankers Standard breached said contracts by failing to:

(a) report accurately the Gem Companies' payroll and loss data to NCCI;

(b) credit properly the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums.

68. As a direct and proximate result of Ace's and/or Bankers Standard's breach, the Gem Companies, as intended beneficiaries, have incurred and will continue to incur significant and substantial losses and damages.

## COUNT VII
## UNJUST ENRICHMENT

**(Claims against MMC, Marsh and Marsh USA)**

69. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

70. MMC, Marsh and/or Marsh USA administered wrap-up polices for various OCIP projects in Rhode Island and Massachusetts to which the Gem Companies were subcontractor-employers. MMC, Marsh and/or Marsh USA failed to report accurately the Gem Companies' payroll and loss data to the respective OCIP Insurer. Upon information and belief, these activities by MMC, Marsh and/or Marsh USA caused the Gem Companies to pay artificially inflated insurance premiums on the wrap-up polices resulting in MMC, Marsh and/or Marsh USA receiving unearned brokerage commissions on the inflated premiums.

71. MMC, Marsh and/or Marsh USA was unjustly enriched as a result of its inaccurate reporting of the Gem Companies' payroll and loss data.

72. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's inaccurate reporting of the Gem Companies' payroll and loss data, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT VIII
## UNJUST ENRICHMENT

**(Claims against ACE and Bankers Standard)**

73. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

74. Ace and/or Bankers Standard issued wrap-up polices for various OCIP projects in Rhode Island and Massachusetts to which the Gem Companies were subcontractor-employers. Ace and/or Bankers Standard failed to (a) accurately report the Gem Companies' payroll and loss data to NCCI; and/or (b) credit properly the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums. Upon information and belief, these activities by Ace and/or Bankers Standard caused the Gem Companies to pay artificially inflated, unearned insurance premiums on the wrap-up polices to Ace and/or Bankers Standard.

75. Ace and/or Bankers Standard was unjustly enriched as a result of its inaccurate reporting and/or crediting of the Gem Companies' payroll and loss data.

76. As a direct and proximate result of Ace's and/or Bankers Standard's inaccurate reporting and/or crediting of the Gem Companies' payroll and loss data, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT IX
## NEGLIGENCE

**(Claims against MMC, Marsh and Marsh USA)**

77. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

78. MMC, Marsh and/or Marsh USA brokered wrap-up insurance policies issued to the Gem Companies for various OCIP projects in Rhode Island and Massachusetts.

79. At all times relevant hereto, MMC, Marsh and/or Marsh USA owed the Gem Companies a duty of care to act in a reasonable, prudent and diligent manner as insurance brokers.

80. MMC, Marsh and/or Marsh USA breached the duty of care owed to the Gem Companies by negligently or recklessly failing to report accurately the Gem Companies' payroll and loss data to the respective OCIP Insurers.

81. At all times relevant hereto, the Gem Companies acted with due care.

82. As a direct and proximate result of the negligent or reckless conduct of MMC, Marsh and/or Marsh USA, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT X
## NEGLIGENCE

**(Claims against ACE and Bankers Standard)**

83. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

84. ACE and/or Bankers Standard issued wrap-up insurance policies to the Gem Companies for various OCIP projects in Rhode Island and Massachusetts.

85. At all times relevant hereto, ACE and/or Bankers Standard owed the Gem Companies a duty of care to act in a reasonable, prudent and diligent manner as insurers.

86. ACE and/or Bankers Standard breached the duty of care owed to the Gem Companies by negligently or recklessly failing to:

(a) report accurately the Gem Companies' payroll and loss data to NCCI;

(b) credit properly the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums.

87. At all times relevant hereto, the Gem Companies acted with due care.

88. As a direct and proximate result of the negligent or reckless conduct of ACE and/or Bankers Standard, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT XI
## BREACH OF FIDUCIARY DUTY

**(Claims against MMC, Marsh and Marsh USA)**

89. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

90. MMC, Marsh and/or Marsh USA, as the OCIP Administrator on various OCIP projects in Rhode Island and Massachusetts, owed fiduciary obligations to the Gem Companies.

91. At all times relevant hereto, the Gem Companies acted with due care.

92. MMC, Marsh and/or Marsh USA, as OCIP Administrator, breached their respective fiduciary obligations by failing to report accurately the Gem Companies' payroll and loss data to the respective OCIP Insurers.

93. As a direct and proximate result of the breach of the fiduciary obligations by MMC, Marsh and/or Marsh USA, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT XII**
**BREACH OF FIDUCIARY DUTY**

**(Claims against ACE and Bankers Standard)**

94. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

95. Ace and/or Bankers Standard, as insurers issuing wrap-up insurance policies for subcontractor-employers working on various OCIP projects in Rhode Island and Massachusetts, owed the Gem Companies fiduciary obligations.

96. At all times relevant hereto, the Gem Companies acted with due care.

97. Ace and/or Bankers Standard breached their respective fiduciary obligations by failing to:

(a) report accurately the Gem Companies' payroll and loss data to NCCI;

(b) credit properly the Gem Companies' payroll and loss data in determining their workers' compensation insurance premiums.

98. As a direct and proximate result of the breach of the fiduciary obligations by Ace and/or Bankers Standard, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT XIII**
**NEGLIGENT MISREPRESENTATION**

**(Claims against MMC, Marsh and Marsh USA)**

99. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

100. MMC, Marsh and/or Marsh USA, as the OCIP Administrator on various OCIP projects in Rhode Island and Massachusetts, provided false or inaccurate material information to others by incorrectly reporting the Gem Companies' payroll and loss data to the respective OCIP Insurers.

101. MMC, Marsh and/or Marsh USA failed to exercise reasonable care or competence in communicating the Gem Companies' payroll and loss data to the respective OCIP Insurers.

102. At the time the information was communicated, MMC, Marsh and/or Marsh USA knew or should have known that the information was false or inaccurate and that the information being provided would be relied upon by others to calculate the Gem Companies' MOD.

103. Each recipient of the false or inaccurate information communicated by MMC, Marsh and/or Marsh USA reasonably and justifiably relied upon the information in the course of its business.

104. As a direct and proximate result of the negligent misrepresentations by MMC, Marsh and/or Marsh USA, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT XIV**
**NEGLIGENT MISREPRESENTATION**

**(Claims against ACE and Bankers Standard)**

105. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

106. Ace and/or Bankers Standard, as insurers issuing wrap-up insurance policies for subcontractor-employers working on various OCIP projects in Rhode Island and Massachusetts, provided false or inaccurate material information to others by incorrectly reporting the Gem Companies' payroll and loss data to NCCI.

107. Ace and/or Bankers Standard failed to exercise reasonable care or competence in communicating the Gem Companies' payroll and loss data to NCCI.

108. At the time the information was communicated, Ace and/or Bankers Standard knew or should have known that the information was false or inaccurate and that the information being provided would be relied upon by others to calculate the Gem Companies' MOD.

109. Each recipient of the false or inaccurate information communicated by Ace and/or Bankers Standard reasonably and justifiably relied upon the information in the course of its business.

110. As a direct and proximate result of the negligent misrepresentations by Ace and/or Bankers Standard, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT XV**
**MISREPRESENTATION CAUSING PECUNIARY LOSS**
**RESTATEMENT (SECOND) OF TORTS, sec. 552**

**(Claims against MMC, Marsh and Marsh USA)**

111. The prior paragraphs are incorporated herein by reference as if set forth in their

entirety.

112. MMC, Marsh and/or Marsh USA, having a pecuniary interest as the OCIP Administrator on various OCIP projects in Rhode Island and Massachusetts, supplied false or inaccurate material information for the guidance of others in the their business transactions by incorrectly reporting the Gem Companies' payroll and loss data to the respective OCIP Insurers.

113. MMC, Marsh and/or Marsh USA failed to exercise reasonable care or competence in obtaining or communicating the Gem Companies' payroll and loss data.

114. At the time the information was communicated, MMC, Marsh and/or Marsh USA was manifestly aware that the information was false or inaccurate and that the information being provided would be relied upon by others to calculate the Gem Companies' MOD.

115. Each recipient of the false or inaccurate information communicated by MMC, Marsh and/or Marsh USA reasonably and justifiably relied upon the information in the course of its business.

116. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's misrepresentations, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT XVI
## MISREPRESENTATION CAUSING PECUNIARY LOSS
## RESTATEMENT (SECOND) OF TORTS, sec. 552

**(Claims against ACE and Bankers Standard)**

117. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

118. Ace and/or Bankers Standard, having a pecuniary interest as insurers issuing wrap-up insurance policies for subcontractor-employers working on various OCIP projects in Rhode Island and Massachusetts, supplied false or inaccurate material information for the guidance of others in the their business transactions by incorrectly reporting the Gem Companies' payroll and loss data to NCCI.

119. Ace and/or Bankers Standard failed to exercise reasonable care or competence in obtaining or communicating the Gem Companies' payroll and loss data to NCCI.

120. At the time the information was communicated, Ace and/or Bankers Standard was manifestly aware that the information was false or inaccurate and that the information being provided would be relied upon by others to calculate the Gem Companies' MOD.

121. Each recipient of the false or inaccurate information communicated by Ace and/or Bankers Standard reasonably and justifiably relied upon the information in the course of its business.

122. As a direct and proximate result of Ace's and/or Bankers Standard's misrepresentations, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**COUNT XVII**
**VIOLATION OF MASSACHUSETTS GEN. LAWS c. 93A**

**(Claims against MMC, Marsh and Marsh USA)**

123. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

124. At all times relevant hereto, MMC, Marsh and/or Marsh USA were engaged in trade or commerce in their dealings with the Gem Companies as the OCIP Administrator on various OCIP projects in Rhode Island and Massachusetts.

125. MMC, Marsh and/or Marsh USA used and/or employed methods, acts, and/or practices constituting unfair and/or deceptive methods of competition and/or acts or practices in the conduct of a trade or commerce declared to be unlawful pursuant to the provisions of M.G.L. c. 93A.

126. MMC's, Marsh's and/or Marsh USA's use and/or employment of said methods, acts, and/or practices constituting unfair and/or deceptive methods of competition and/or acts or practices in the conduct of a trade or commerce declared to be unlawful pursuant to M.G.L. c. 93A was a knowing and/or willful violation of the provisions of M.G.L. c. 93A.

127. As a direct and proximate result of MMC's, Marsh's and/or Marsh USA's use and/or employment of said methods, acts, and/or practices constituting unfair and/or deceptive methods of competition and/or acts or practices in the conduct of a trade or commerce declared to be unlawful pursuant to the provisions of M.G.L. c. 93A, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

## COUNT XVIII
## VIOLATION OF MASSACHUSETTS GEN. LAWS c. 93A

**(Claims against ACE and Bankers Standard)**

128. The prior paragraphs are incorporated herein by reference as if set forth in their entirety.

129. At all times relevant hereto, Ace and/or Bankers Standard were engaged in trade or commerce in their dealings with the Gem Companies as insurers issuing comprehensive wrap-up insurance policies on various OCIP projects in Rhode Island and Massachusetts.

130. Ace and/or Bankers Standard used and/or employed methods, acts, and/or practices constituting unfair and/or deceptive methods of competition and/or acts or practices in the conduct of a trade or commerce declared to be unlawful pursuant to the provisions of M.G.L.

c. 93A.

131. Ace's and/or Bankers Standard's use and/or employment of said methods, acts, and/or practices constituting unfair and/or deceptive methods of competition and/or acts or practices in the conduct of a trade or commerce declared to be unlawful pursuant to M.G.L. c. 93A was a knowing and/or willful violation of the provisions of M.G.L. c. 93A.

132. As a direct and proximate result of Ace's and/or Bankers Standard's use and/or employment of said methods, acts, and/or practices constituting unfair and/or deceptive methods of competition and/or acts or practices in the conduct of a trade or commerce declared to be unlawful pursuant to the provisions of M.G.L. c. 93A, the Gem Companies have incurred and will continue to incur significant and substantial losses and damages.

**WHEREFORE**, Plaintiffs seek judgment in their favor and against Defendants for:

(i) monetary damages, including without limitation, actual damages, compensatory damages, special damages, consequential damages, punitive damages, and double or treble damages, the amount of which to be determined at trial but, in any event, exceeding the jurisdictional minimum;

(ii) interest;

(iii) attorneys' fees;

(iv) costs; and

(v) such further relief as this Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**PLAINTIFFS HEREBY DESIGNATE MOTLEY RICE LLC AS TRIAL COUNSEL.**

GEM MECHANICAL SERVICES, INC. and
GEM PLUMBING & HEATING CO., INC.,
Plaintiffs,
By their Attorneys,

MOTLEY RICE LLC

______________________________________

Robert J. McConnell, Esq. # 3888
321 South Main Street
Providence, RI 02903
(401) 457-7700
(401) 457-7708 *fax*

*and*

ORSON AND BRUSINI LTD.

______________________________________

Stephen J. Brouillard, Esq. # 6284
325 Angell Street
Providence, RI 02906
(401) 223-2100
(401) 861-3103 *fax*
Email: sbrouillard@orsonandbrusini.com

**CERTIFICATE OF SERVICE**

I hereby certify that on ___ the day of _______________, 2006 this document has been filed electronically with the Court, is available for viewing and downloading from the ECF system, and has been served by first class mail, postage prepaid, on the following individuals:

Philip T. Newberry, Jr., Esq.
Mark J. Claflin, Esq.
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114

______________________________________